850 So.2d 916 (2003)
Billie Lester HAYES, et al., Plaintiffs-Appellants,
v.
ENTERGY CORPORATION, et al., Defendants-Appellees.
No. 37,190-CA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
*918 Paul B. Wilkins, Columbia, W. Mark McKee, West Monroe, for Appellants Billie L. Hayes, Darleen Hayes Parks, Carolyn Hayes, Tonya Hayes Lang and Randall Hayes.
Dawkins & Carter by William S. Carter, Jr., for Intervenor Appellee American Interstate Ins. Co.
The Boles Law Firm by Michael L. DuBos, for Appellees Louisiana Power & Light Co., Entergy Louisiana Inc. and Carl Comeaux.
Before STEWART, DREW and MOORE, JJ.
STEWART, J.
The family of Billie Lester Hayes ("family") appeals the jury's finding of no liability on the part of Entergy in the accident that resulted in the death of her husband, Prentice Hayes ("Hayes"). Finding no merit in the plaintiff's claims, we affirm.

FACTS
The events that gave rise to this wrongful death action occurred on August 23, 1999, on Holmon Road, a rural gravel roadway in Caldwell Parish. Prentice Hayes, a truck driver for J.K.M. Trucking was killed while attempting to unload a logging shear beneath a power line traversing Holmon Road. Hayes had gone to pick up the logging shear from the repair shop and bring it to the site on Holmon Road so that the logging crews would be able to use it the next morning. Hayes met Johnny Martin ("Martin"), owner of J.K.M. Trucking and J.K.M. Pulpwood, at the repair shop to pick up the shear. After Hayes insisted on unloading the shear that evening, Martin gave him permission to go and unload the massive shear alone in a particular area of Holmon Road. Hayes was quite familiar with the area having frequented Holmon Road during his work day, averaging 4 to 6 trips a day carrying logs in the three months leading up to the accident.
Entergy has an eight kilovolt power line that services the homes on Holmon Road. The line is a single phase line consisting of the primary conductor strung above the neutral conductor. Entergy's lines criss-cross the roadway several times. In spite of the fact that there was a clearing area more suitable for unloading on the right side of the road, Hayes unloaded the shear at a point on the road directly underneath one of these power lines on the left side of the road. He lowered the dove tail ramps on the trailer and got into the shear. Hayes then raised the shear head and backed the shear off of the lo-boy trailer. At some point, the shear head made contact with the energized power line. Apparently, Hayes noticed that he was touching the power line and attempted to exit the cab of the shear. He climbed out of the shear and onto the deck of the lo-boy trailer. As he leaned back to look *919 at the overhead power line, Hayes touched the energized shear. Because of the rubber tires, he was protected from shock while in the shear, but Hayes was unprotected while on the deck of the lo-boy because a path to the ground was now created. Hayes received an electrical shock that knocked him to the deck of the trailer, and according to the coroner, resulted in his death. As Hayes lay on the lo-boy, the shear rolled over the dove tail ramps and crushed him.
Following a trial on the merits, the jury determined that Entergy was not at fault for this accident. This appeal ensued.

DISCUSSION
Standard of Review
This court's review of the trial court's findings is governed by the manifest error/clearly wrong standard. Stobart v. State of La. Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Jones v. Cobb, 36,724 (La.App.2d Cir.12/30/02), 834 So.2d 13. Where there is conflict in the testimony reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra; Rosell, supra.
Liability of Entergy
In order to establish liability for negligence on the part of a power company, a plaintiff must prove not only that his injuries were caused by the transmission of electricity from the power company's line, but also that the risk which resulted in plaintiff's injuries was an unreasonable one and that the power company failed to comply with a duty or standard of care requiring it to take precautions against that danger. Levi v. Southwest La. Elec. Mem. Cooperative (SLEMCO), 542 So.2d 1081 (La.1989).
Johnny Martin testified that Hayes was not trained to unload the shear from the lo-boy, and that had he been there, he would have unloaded the shear himself. Martin testified that, in spite of his attempts to persuade Hayes to wait until the morning to unload the shear, Hayes insisted on unloading the shear that evening so that it would be ready for the loggers when they came to work in the morning.
The family asserts that the power lines in question were out of compliance with National Electric Security Code (NESC) standards and the cause in fact of this accident. There was considerable testimony about the appropriate standards for line height under the NESC and conflicting expert testimony about whether the aforementioned lines were actually, "out of sag" as the family contends.
The family asserts that Entergy's failure to inspect these lines and correct their sagging was in violation of its duties. Dobson v. Louisiana Power and Light, 567 So.2d 569 (La.1990); Nigreville v. Federated Rural Elec. Ins. Co., 93-1202 (La. App. 3d Cir.7/13/94), 642 So.2d 216; Weaver v. Valley Elec. Membership Corp., 615 So.2d 1375 (La.App. 2d Cir.1993). The family further asserts that because Entergy did not have knowledgeable employees that conducted meaningful inspections of the electrical lines on Holmon Road, they failed to discover and correct the excessively sagged line which caused the accident that resulted in Prentice Hayes' death.
*920 The Louisiana Supreme Court has duly noted that the obviousness and apparentness of an allegedly dangerous condition are relevant factors to be considered under the duty-risk analysis. If the facts demonstrate that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous and the defendant may owe no further duty to the plaintiff. Pitre v. La. Tech Univ., 95-1446 (La.5/10/96), 673 So.2d 585, 592.
The record is replete with testimony from a battery of Entergy employees-Bobby Dubose, Herman McCarty, Kenny Robertson, Tony Smith, William Comeaux, and Danny Carpenter, regarding their duties concerning the inspection, repair, and upkeep of power lines. Although Entergy did not have a specific individual whose job it was to go around and inspect electrical lines or poles, we do not find that such a program is necessary to meet its standard of care to the public. If ever there is a problem with a line, Entergy's linemen, meter readers, pole inspectors, vegetative maintenance crews and supervisors, who all work with the lines on a daily basis, will report the matter. In fact, each Entergy employee that testified was safety conscious and understood that they had a responsibility to report any hazards posed by low-lying or downed power lines. Moreover, Entergy's engineers have incorporated the NESC standards into line construction and all lines comply with said standards.
There was competing expert testimony concerning whether the power lines were out of compliance with NESC standards. The electrical lines are made of aluminum and as the temperature increases, the lines expand and droop closer to the ground. The lower the temperature, the higher the lines are from the ground. But no matter the temperature, the lowest height of the line should always be 18 feet, 6 inches. On the day of the accident the temperature was in the low 90 degrees. While lying flat on the trailer which was five feet off the ground, the highest part of the shear that was the subject of this accident was 18 feet, three inches. The plaintiff's expert witness in electrical engineering, Robert Nethken, an associate professor at LSU, testified that he measured the line where the accident took place in several places but that he only recorded the area where the memorial to Hayes was located because the area on the line appeared to have a burn spot. He testified that the minimum height requirement for a line in Louisiana at 120 F is 18 feet, 6 inches. At 95 F, this same line should be at 20 feet. Although the accident occurred in August, Entergy's surveyors measured the line in February when the temperature was 41 F and recorded a measurement of 21 feet 9 inches, and in March when it was 67 F and the line measured 19 feet, 9 inches. Nethken measured the line in August, when it is obviously hotter than February or March, of the same year and recorded a measurement of 17 feet, 9 inches. Consequently, Nethken's theory was that at a temperature of 120, the line would be as low as 15 feet, 9 inches which would be far from the requirements of the NESC. Nethken asserted that the line had a sag of 16 feet which would be easily observed by someone trained to inspect electrical lines. However, it is important to note that Nethken admitted that had Hayes unloaded the shear at any other point along the line, he would not have been electrocuted, or better still, had he unloaded the shear in the clearing on the opposite side of the road rather than 10 feet from the line, he would not have been electrocuted.
Upon cross examination, Nethken admitted that all of his measurements were post accident measurements, and that he had no idea what the height of the shear *921 was at the time of the accident. Nethken also stated that he could not say whether any contact between the shear and the line altered the height of the line at the time of the accident. Finally, Nethken admitted that Hayes deviated from the appropriate standard for parking and unloading underneath electric lines in disregard for the manufacturers' warnings for the machine he was operating.
In response, Entergy called Frederick Brooks ("Brooks") as an expert in electrical engineering and accident reconstruction and the application of NESC and Occupational Safety and Health Administration (OHSA) standards. He testified that Nethken's method of measuring allowed for a greater opportunity for error, and that there was no way that the line could have sagged with any change in temperature to the degree asserted by Nethken. Brooks also testified that Hayes failed to follow OSHA regulations in that he parked the trailer under the electrical line, that he should not have exited his cab without lowering the shear head to the deck of the cab, and that he should have applied the parking brake. Brooks further stated that the sole cause of this accident, even if he were to accept Nethken's measurements, was Hayes' decision to unload the shear under the electrical lines. From his investigation, Brooks concluded that as Hayes was backing the shear off the lo-boy he noticed that something was amiss, such as the shear head being caught in the line, and when he took his glasses in his hand and stepped onto the deck of the lo-boy, he suffered an electrical shock. Brooks also surmised that the fact that the shear was coming off of the lo-boy in a crooked manner was suggestive of Hayes' inability to handle the machine or that something had gone awry during the unloading process.
Despite these differing opinions, it is well accepted that the trier of fact is charged with the determination of what credibility it assigns to expert witnesses and the decision about which expert among those testifying is more credible. Lasyone v. Kansas City Southern R.R., 00-2628 (La.4/3/01), 786 So.2d 682. The jury obviously chose to reject the testimony of Nethken. Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error. Id.
We find that the jury's determination of no liability on the part of Entergy in this case to be reasonable in light of the record before us. The evidence establishes that all of the other electrical lines that cross Holmon Road far exceed the minimum requirements of the NESC except for the spot where Hayes was killed. The testimony of Brooks established that it was quite possible that the shear head pulled the wire down. Moreover, although the evidence also established that Entergy employees were not aware of the height requirements for electrical lines and that Entergy did not have an inspection team of employees who were responsible for making sure that electrical lines that it put up were in compliance with NESC standards, we find that such an onerous program is unnecessary for Entergy to discharge its responsibilities to the public. It is undisputed that Hayes made the unfortunate decision to unload a piece of machinery that he was not qualified to drive under an electric wire when he could have safely unloaded it in the clearing across the street. The jury was not manifestly erroneous or clearly wrong in finding no liability on the part of Entergy, and their decision to find the defense expert more *922 credible than the plaintiff's expert should not be overturned.
Jury Charges
The family asserts that the trial court erred when it failed to instruct the jury on the comparative fault factors outlined in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985). They contend that the court's failure to utilize the Watson factors was unduly prejudicial in that it spoke only of the reasonable person standard, and the charge led the jury to believe that Hayes was negligent in causing his own harm. An analysis of the Watson factors include: 1) whether the conduct resulted from inadvertence or involved an awareness of the damages; 2) how great a risk was created by the conduct; 3) significance of what was sought by the conduct; 4) the relative capacities of each, whether superior or inferior; and 5) any extenuating circumstances which might have required the individual to proceed in haste, without proper thought. As a critical component in evaluating Entergy's fault and negligence, the jury has to be charged with the proper instructions to inform the jury of Entergy's duties. Of specific importance are proposed jury instructions Nos. 5, 6, and 11 which precisely enumerated Entergy's duties with regard to its superior knowledge. The family contends that the court's refusal to allow these particular instructions deprived the jury of an opportunity to fairly evaluate the facts and the law and amounted to an undue prejudice to their case.
Proposed Jury Instruction No. 5 states:
The utility's duty to take reasonable measures to show that workers legitimately in they are able to work without an unreasonable risk of harm from high voltage transmission lines.
Weaver v. Valley Elec. Mem. Corp., 615 So.2d 1375 (La.App. 2d Cir.1993).
The jury was instructed that Entergy has a duty "to guard against reasonably foreseeable hazards," so this proposal is encompassed by that statement. Secondly, the Family asserts that it was error for the trial court to omit Proposed Jury Instruction No. 6., which states,
Even more than the ordinary reasonable person, a power company is required to recognize and make reparation for a risk that takes effect through another's foreseeable negligence. It is not due care for the transmitter of high voltage electricity, who is charged with protecting and practicing electrical safety measures against the risk of injury from contact by another with transmission lines, to rely on another to exercise due care for his or her own protection when the transmitter has superior knowledge of the danger of high voltage and a greater experience with electrical safety measures that should be employed.
Weaver v. Valley Elec. Mem. Corp., 615 So.2d 1375 (La.App. 2d Cir.1993).
We find that this statement is subsumed within the existing instructions as it speaks to the duty of Entergy to guard against foreseeable negligence and hazards.
Finally, the family asserts that the omission of Proposed Jury Instruction No. 11 was error. It states,
Entergy is responsible for maintaining the safety of its power lines. The National Electrical Safety Code sets regulations for, among other things, proper height of power lines. The Code requires energized lines such as the one involved in the accident to have a minimum height of 18.5 feet at a temperature of 120.
We find that the omission of this instruction was proper because it may have mislead the jury to the conclusion that noncompliance with the NESC is determinative *923 of fault. We find no manifest error in this omission.
Consequently, the family's claim regarding the jury charges is without merit. Trial courts are given broad discretion in formulating jury instructions, and it is well accepted that a trial court judgment will not be reversed so long as the charge correctly states the substance of the law. Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017. The omission of a specific Watson charge is immaterial. Jury Interrogatory No. 1, asked:
Do you find that the plaintiffs have established by a preponderance of the evidence that Entergy Corporation was at fault which caused or contributed to the cause of the death of Prentice Hayes on August 23, 1999?
The jury responded that they did not find that the plaintiffs met their burden of proof in demonstrating that Entergy was at fault or contributed to Hayes' death. The jury's negative response precluded any further discussion of comparative fault. Despite that fact, the jury was still instructed as to comparative fault.
The jury instructions stated:
In assigning degrees or percentages of fault to the various persons involved in this incident, you may find it helpful to measure their conduct against the conduct of the person the law describes as the reasonably prudent person. The reasonably prudent person will avoid creating an unreasonable risk of harm. In determining whether a person will avoid creating an unreasonable risk of harm, you may weigh the likelihood that someone might have been injured by the person's conduct and the seriousness of that injury against the importance to society of what the person was doing and the advisability of the way in which he was doing it, under the circumstances.
The greater the deviation made by a person from this standard, the greater should made his degree or percentage of fault combining with others to cause this incident.
A reasonably prudent person is required to make use of his faculties of sight, hearing and intelligence to discover dangers and hazards to which he is or may be exposed, and if he is injured as a result of his failure to use his faculties to observe and discover a hazard which would have been observed by a person exercising due care, you may conclude that he was negligent in causing his own harm.
We find that the jury was adequately instructed as to the duty of Entergy, as the foregoing adequately addressed the substance of the law on comparative negligence without a specific Watson charge. Proposed jury instruction 5 was properly encompassed in the existing instruction. Instructions 6 and 11 were properly excluded as they were incomplete and misleading.

CONCLUSION
In sum, the jury made a credibility determination after hearing all of the facts and evidence presented in this matter and such a finding should not be disturbed absent manifest error. No such error exists in the instant matter. Costs are assessed to appellant.
AFFIRMED.